# In the United States Court of Federal Claims

BID PROTEST
No. 19-839C
(Filed Under Seal: October 1, 2019 | Reissued: October 15, 2019)*

|  |  |  |
|---|---|---|
| NETCENTRICS CORPORATION, | ) ) ) | Keywords: Stay Pending Appeal, Bid Protest, Injunction, Irreparable Harm, Public Interest. |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| THE UNITED STATES OF AMERICA, | ) ) |  |
| Defendant. | ) ) |  |

*Karen R. Harbaugh* and *Jeremy W. Dutra*, Squire Patton Boggs (US) LLP, Washington, DC, for Plaintiff.

*Antonia R. Soares*, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General. *Lisa Marie Golden*, *Michael G. Anderson*, and *Aaron M. Levin*, Assistant General Counsel, Office of General Counsel, Washington Headquarters Services & Pentagon Force Protection Agency, Department of Defense, Washington, DC, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

In this case, the plaintiff, NetCentrics Corporation ("NetCentrics") protested the decision of the Department of Defense's Washington Headquarters Services ("WHS" or "agency") to rescind a contract award to NetCentrics. On September 6, 2019, the Court ruled in the government's favor on the parties' cross-motions for judgment on the administrative record. Op. and Order ("Op."), ECF No. 44. NetCentrics appealed the Court's decision on September 9,

---

* This opinion was originally issued under seal and the parties were given the opportunity to request redactions. The government did not request any redactions. At NetCentrics's request, the Court has redacted the name of the individual NetCentrics proposed for Deputy Program Manager, as well as that person's position title under the previous NetCentrics incumbent contract and related identifying information. The Court has substituted "Mr. A" for the individual's name. The Court also redacted details of the irreparable harm NetCentrics identified in the declaration from its Chief Executive Officer.

2019, ECF No. 45, and has now filed a motion to stay that decision pending the outcome of the appeal, ECF No. 46. For the reasons discussed below, NetCentrics's motion for a stay is **DENIED**.

## BACKGROUND

The relevant facts are set forth in detail in the Court's September 6, 2019 Opinion. See Op. at 2–10. To briefly summarize: NetCentrics, the incumbent contractor, was the awardee in a competition for a new contract to provide information technology support services to the Department of Defense's Joint Service Provider ("JSP"). After the award was announced, one of NetCentrics's competitors, NCI Information Services ("NCI"), filed a bid protest with the Government Accountability Office ("GAO"). In its protest, NCI alleged that Mr. A, one of the key personnel identified in NetCentrics's proposal, had left NetCentrics's employ and was not available to perform on the contract at the time of the award.

The agency conducted an inquiry to determine the validity of NCI's protest. After giving NetCentrics the opportunity to supply evidence to the contrary, the agency concluded that NetCentrics's final proposal revision ("FPR") included material misrepresentations. NetCentrics had not updated Mr. A's resume to reflect that he had left NetCentrics thirty days before it submitted its FPR. But more importantly, the agency found that NetCentrics did not have reasonable grounds to continue to represent that Mr. A would be available immediately to serve as Deputy Program Manager if NetCentrics were awarded the contract.

As noted, on September 6, 2019, the Court denied NetCentrics's motion for judgment on the administrative record and granted the government's cross-motion. The Court found reasonable the agency's conclusion that, at the time NetCentrics submitted its FPR, Mr. A had not committed to return to NetCentrics in the event it secured the contract award. The Court further concluded that because Mr. A had departed without making such a commitment, it was also rational for the contracting officer ("CO") to find that NetCentrics lacked a reasonable basis for believing that it could make Mr. A immediately available to perform on the contract. In addition, the Court found reasonable the agency's determination that the misrepresentation as to Mr. A's immediate availability was a material one because the agency had relied upon it in selecting NetCentrics for the award.

NetCentrics filed a notice of appeal on September 9, 2019 along with the present motion for a stay pending appeal. For the reasons set forth below, NetCentrics's motion is **DENIED**.

## DISCUSSION

### I. Legal Standard

Rule 62(c) of the Rules of the Court of Federal Claims provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."

It is well established that an injunction pending appeal is an "extraordinary" remedy. E.g., Telos Corp. v. United States, 129 Fed. Cl. 573, 575 (2016) (quoting Akima Intra-Data, LLC

v. United States, 120 Fed. Cl. 25, 27 (2015)); see Nken v. Holder, 556 U.S. 418, 428 (2009). To determine whether such extraordinary relief is appropriate, the court must "assess[] [the] movant's chances for success on appeal and weigh[] the equities as they affect the parties and the public." Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 513 (Fed. Cir. 1990) (quoting E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987)). This assessment involves the "flexible" consideration of four familiar factors: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will likely suffer irreparable harm absent an injunction; (3) whether the injunction would substantially injure other interested parties; and (4) whether the public interest would be served by the injunction. Telos Corp., 129 Fed. Cl. at 575 (citing Standard Havens, 897 F.2d at 512); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

"[T]he . . . factors contemplate individualized judgments in each case, [and] the formula cannot be reduced to a set of rigid rules." Hilton v. Braunskill, 481 U.S. 770, 777 (1987). The court's flexibility, however, is not unlimited; at the very least, the movant must demonstrate a "substantial case on the merits," with the other factors "tilt[ing] decidedly toward" the movant. E.g., Telos Corp., 129 Fed. Cl. at 575 (quotations omitted); see also Standard Havens, 897 F.2d at 513.

## II.    Application to This Case

### A. **Likelihood of Success or Substantial Case on the Merits**

This case, as noted, concerns the reasonableness of a corrective action that the agency took in the wake of a protest filed by one of NetCentrics's competitors. An agency's decision to take corrective action is reviewed under the Administrative Procedure Act's "'highly deferential' 'rational basis' standard." Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 992 (Fed. Cir. 2018) (quoting Croman Corp. v. United States, 724 F.3d 1357, 1363 (Fed. Cir. 2013)). "The rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Id. (quoting Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004)). In applying the test, the Court may not substitute its judgment for that of the agency. See Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989). So long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion." Id. (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

In this case, the Court concluded that the agency provided a coherent and rational explanation for its decision to rescind the contract award and disqualify NetCentrics from the competition. The CO documented in painstaking detail the reasons she found that NetCentrics's proposal misrepresented Mr. A's availability. She reviewed the declaration of NetCentrics's Senior Vice President, Steve Walker, on a paragraph-by-paragraph basis. In the end, she found the representations in his declaration opaque and inconclusive. Because the conclusions she drew were rational and well-explained, and given the highly-deferential standard of review, the Court found no basis for disturbing the agency's corrective action.

In its motion for a stay, NetCentrics challenges the Court's finding that it was reasonable for the agency to conclude that the misrepresentations in NetCentrics's proposal were material,

3

i.e., were relied upon by the agency when it made its award decision. See Mem. of P. & A. in Supp. of Pl.'s Mot. for Stay Pending Appeal ("Pl. Mem."), ECF No. 46-1, at 2-3. First, NetCentrics contends, the Court inaccurately stated that the agency relied on its representation that Mr. A was a current NetCentrics employee. Id. at 2. It observes that in its motion for judgment on the administrative record the government acknowledged that "Mr. A's employment status was not the basis for the disqualification determination." Id. (quoting Def. Mot. for J. on the Admin. R. at 20).

NetCentrics mischaracterizes the Court's decision. The Court expressly stated that "the agency's disqualification decision was not based on the fact that the proposal did not accurately reflect Mr. A's employment status." Op. at 18. "Rather," the Court explained, because of "that misstatement and in response to a bid protest filed by NCI, the agency decided to seek further information to confirm whether—notwithstanding that he was no longer an employee—NetCentrics could still make good on its commitment to make him immediately available to work on the new contract." Id. at 18-19. The Court observed that it was the latter misrepresentation that the agency concluded was a material one. Id. at 19.

Further, the Court agreed that it was reasonable to find that misrepresentation material because the agency had assigned NetCentrics a strength for the one-year commitment of its key personnel, including Mr. A, and had noted the "substantial benefit to the Government" conferred through "continuity of capable and knowledgeable contractor Key Personnel." Op. at 17-18 (citing AR Tab 22 at 2892). NetCentrics does not deny that the agency relied on Mr. A's immediate availability when assigning this strength. NetCentrics does claim, however, that the Court erred when it observed that the agency assigned it another strength in part because its "proposed team already operate and are familiar with the requirements described for Service Delivery." Pl. Mem. at 2-3 (citing Op. at 18 (quoting AR Tab 22 at 2889-90)). It contends that the "team" to which the evaluators referred consisted of "NetCentrics and its subcontractors," and not any specific employee. Id. at 3 (citing AR Tab 19 at 2355-57).

But in its proposal, quoted in the section assigning a strength for "Incumbent Personnel," NetCentrics stated that it would provide a "stable contract team" which it defined as being "led by experienced managers and supported by collaborative subcontractors and skilled technical staff." AR Tab 22 at 2889-90. Mr. A, of course, was one of the experienced managers elsewhere identified in the proposal.

NetCentrics similarly states that the strength it received for its Phase-In Plan also did not involve Mr. A because he was not proposed as a member of NetCentrics's "transition team." Pl. Mem. at 3 (citing Op. at 18); see also AR Tab 19 at 2424 (identifying the four members of the transition team). But the strength the agency assigned was not predicated on the identity of those team members. It was predicated on the fact that the Plan provided continuity in terms of those responsible for providing services to the agency, which included Mr. A in the position of Deputy Program Manager. See AR Tab 22 at 2872 (evaluation findings noting that the Phase-In Plan proposed "the transition of the same personnel that currently provide services to the JSP, which ensures uninterrupted service quality and will allow full transfer of services on or before the 60-day phase-in period" and that "incumbent personnel . . . are already familiar with the JSP's requirements and challenges, which will enable [NetCentrics] to focus on a more efficient execution of process").

4

NetCentrics also resurrects its arguments that it was irrational for the agency to conclude that—at the time it submitted its FPR—it lacked a reasonable basis for believing that Mr. A would be "immediately" available to perform on a contract awarded under the Solicitation. Pl. Mem. at 3. First, it observes that Mr. A participated in the development of its initial proposal, submitted in August 2018, which identified him as Deputy Program Manager for the new contract, with immediate availability. Id. at 3-4. But in August 2018, Mr. A was still a NetCentrics employee. Op. at 3. He left NetCentrics three months later for a new job. Id. The critical issue for the agency was the extent to which NetCentrics confirmed before it submitted its FPR that Mr. A would still be immediately available, notwithstanding that he had gone on to a new job with another employer. Id. at 17.

Second, NetCentrics contends that WHS should have inferred Mr. A's commitment to return to NetCentrics's employ based on the fact that his resume showed: 1) his "long-standing relationship with NetCentrics," and 2) that he served as NetCentrics's [* * *] on the JSP program from [* * *], departed for [* * *] period in [* * *], and then returned to NetCentrics in [* * *] to serve as [* * *] on the JSP program. Pl. Mem. at 4. It asserts that "WHS—as the procuring agency for the JSP program—unquestionably was aware that Mr. A's previous departure coincided with a previous JSP re-compete and that Mr. A's return to NetCentrics coincided with WHS's award of the incumbent JSP contract to NetCentrics." Id. (citing App. 2d to Mot. for Prelim. Inj. (Decl. of Kirk Johnson ¶ 6), ECF No. 6).

It is a bit of a stretch to characterize Mr. A as having a "longstanding relationship" with NetCentrics. His resume covers his employment in a variety of IT positions for a variety of employers, starting in 1995. AR Tab 19 at 2438-40. His first stint with NetCentrics, which lasted about a year, began in [* * *], some twenty-one years into his career. Id. at 2438. He returned in [* * *], only to depart again about [* * *] months later. Id.

But more to the point, the fact that Mr. A previously left NetCentrics during a re-compete of the JSP contract, and then returned when it received the award, in and of itself, would tell the agency nothing about whether he intended (much less committed) to do so in connection with the current procurement. The administrative record in this case does not reveal the identity of his new employer or the nature of his new position. It does not indicate that the position was temporary. And Mr. A's parting words to the NetCentrics team did not suggest that he expected that he was moving on only temporarily. To the contrary, in his farewell email he stated that his decision to leave was "not an easy [one] to make" but that it would "take [his] career to its next phase" and that he was "prepared to give it [his] best shot." AR Tab 32 at 3256.

NetCentrics further argues that WHS did not address the substance of the statement in Mr. Walker's declaration that before his departure on November 3, 2018, "Mr. A expressed to Mr. Johnson his interest and willingness to return to NetCentrics in the future should the opportunity present, including if NetCentrics received the contract award under the RFP." Pl. Mem. at 4 (citing AR Tab 32 at 3253 at ¶8(d)). This is incorrect. The quoted statement, which appears in paragraph 8(d) of Mr. Walker's Declaration, was among those that the CO specifically referenced and characterized as "superficial" in nature, and typical of the type of unspecific statement that might be made at an "exit interview." AR Tab 32 at 3215.

5

Finally, NetCentrics cites a letter of commitment that it procured from Mr. A when this matter was before GAO. Pl. Mem. at 5 (citing AR Tab 41 at 3729). But this letter was executed on March 1, 2019, after the agency had already made its decision. Id. And, as GAO observed, the letter does not establish or even speak to the extent of Mr. A's commitment to return at the time NetCentrics submitted its revised proposal, some four months earlier. AR Tab 50 at 3848.

For the foregoing reasons, as well as those set forth in the Court's September 6 Opinion, NetCentrics does not have a substantial likelihood of success on the merits of its appeal. Nor has it presented a substantial question on the merits.

### B. Balance of Equities

The Court turns to a consideration of the balance of equities in this case. It finds that they also favor denial of plaintiff's motion for a stay.

First, NetCentrics contends that it will suffer irreparable harm if the award of the contract to NCI is not stayed pending completion of its appeal. Pl. Mem. at 6-9. According to NetCentrics, if the award goes forward, it will lose approximately [* * *] of both its monthly revenue and monthly gross margin, which would reduce its run rate by almost [* * *]. See Pl. Mot. for Stay Pending Appeal Ex. 1, at 2, (Decl. of Cynthia Barreda ¶7), ECF No. 46-2. It also claims that it will have to [* * *] approximately [* * *], or more than [* * *], including up to [* * *]. Id. at ¶¶8, 10. The loss of these [* * *], NetCentrics alleges, will create an increased risk [* * *]. Id. at ¶10. It further states that the [* * *] will negatively affect its ability to [* * *]. Id. at ¶12. NetCentrics predicts that "[l]oss of the JSP contract while [its] appeal is pending, combined with [* * *] will result in NetCentrics [* * *]. Id. at ¶14.

Some of these allegations of harm seem to the Court to be at least somewhat speculative, particularly given that NetCentrics is currently competing for other apparently lucrative contracts. But in any event, the irreparable harms alleged are not of a type that justify a stay in the bid protest context. Thus, "'[n]o federal contractor has a right to maintain its incumbency in perpetuity,' and 'the potential loss of the benefits of incumbency does not give a bid protest plaintiff some sort of automatic right to a stay pending appeal.'" Akima, 120 Fed. Cl. at 28 (quoting CRAssociates, Inc. v. United States, 103 Fed. Cl. 23, 26 (2012)); see also Navient Sols., LLC v. United States, 141 Fed. Cl. 181, 184 (2018) (quoting Akima). Similarly, an incumbent's "reliance on the loss of its current employees as a basis for irreparable injury would require this Court to consider any incumbent contractor's loss of a successor contract to be irreparable harm." PGBA, LLC v. United States, 60 Fed. Cl. 196, 221 (2004). NetCentrics's "financial strain," like that of any incumbent contractor that is unsuccessful in a new competition, "is 'the unavoidable result' of its [contract] coming to an end." See Navient, 141 Fed. Cl. at 185 (citing Telos Corp., 129 Fed. Cl. at 578). The harms it claims are "the sorts of [harms] that any incumbent would experience upon the loss of a successor contract," and "if [Netcentrics] is right that these typical types of harm warrant a stay pending appeal here, then such would be true for every incumbent who fails to obtain a successor contract." See CRAssociates, 103 Fed. Cl. at 26.

On the other hand, the government contends that granting NetCentrics's motion will cause it substantial harm. Def.'s Resp. in Opp'n to Pl.'s Mot. for a Stay or Inj. Pending Appeal ("Def.'s Opp'n"), at 22-25, ECF No. 60. If a stay is granted, according to the government, the

JSP will be required to continue to sole-source six emergency contracts with six different vendors, rather than proceeding with a single consolidated contract as provided under the Solicitation. App. to Def.'s Opp'n at A34 (Decl. of Jerry H. Russel ¶¶ 5-7), ECF No. 60-1; id. at A37-38 (Decl. of Admiral Brian S. Hurley ¶¶ 9-12). This will result in continued service delivery inefficiencies according to the government, as well as $5,542,737.26 in additional costs. Id. at A34, A35 (Russell Decl. ¶¶ 6-8, 11). The Court agrees that these harms are significant and militate against granting NetCentrics's motion for a stay.

Finally, the Court concludes that the public interest would not be served by issuing a stay pending appeal. To the contrary, the public interest would be served by allowing the government to use the more efficient and less expensive contract while the matter is before the court of appeals. And the public perception regarding the integrity of the procurement process would be disserved if NetCentrics were permitted to continue to provide services under contract, notwithstanding the agency's finding that its FPR contained a material misrepresentation.

## CONCLUSION

For the reasons set forth above, NetCentrics's motion for a stay pending appeal is **DENIED**.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge