# In the United States Court of Federal Claims

BID PROTEST
No. 19-839C
(Filed Under Seal: January 3, 2020 | Reissued: January 10, 2020)*

|  |  |  |
|---|---|---|
| NETCENTRICS CORPORATION, | ) | Keywords: Bid Protest; RCFC 60(b); Relief from Judgment; Newly Discovered Evidence; Fraud, Misrepresentation, or Misconduct. |
|  | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THE UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

*Robert Nichols*, Nichols Liu LLP, Washington, DC, for Plaintiff, with whom was *Andrew Victor*, Nichols Liu LLP, Washington, DC, Of Counsel.

*Antonia R. Soares*, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General. *Lisa Marie Golden*, *Michael G. Anderson*, and *Aaron M. Levin*, Assistant General Counsel, Office of General Counsel, Washington Headquarters Services & Pentagon Force Protection Agency, Department of Defense, Washington, DC, Of Counsel.

*Daniel P. Graham*, Vinson & Elkins LLP, Washington, DC, with whom were *Joshua S. Johnson*, *Tyler E. Robinson*, *Ryan D. Stalnaker*, Vinson & Elkins LLP, Washington, DC, Of Counsel, for Defendant-Intervenor.

---

* This Opinion was originally issued under seal and the parties were given the opportunity to request redactions. The government did not request any redactions. At NetCentrics's request, the Court has redacted the name of the individual NetCentrics proposed for Deputy Program Manager. The Court has substituted "Mr. A" for the individual's name. At the request of the intervenor, NCI Information Systems, the Court redacted the name of the individual who executed the July 19, 2019 declaration at issue in this Opinion, as well as related identifying information, and substituted "Mr. B."

**OPINION AND ORDER**

**KAPLAN, Judge.**

This bid protest is before the Court on a Motion for Relief from Judgment on the Administrative Record ("Pl.'s Mot.") filed by the plaintiff, NetCentrics Corporation ("NetCentrics"), pursuant to Rule 60(b)(2) and/or (3) of the Rules of the Court of Federal Claims ("RCFC"). ECF No. 91. For the reasons set forth below, NetCentrics's motion is **DENIED**.

**BACKGROUND**

This case arose out of a protest that NetCentrics filed to challenge the decision of the Department of Defense's Washington Headquarters Services ("WHS" or the "agency") to rescind a contract award to NetCentrics because it found that Netcentrics's final proposal revision ("FPR") contained a material misrepresentation. On September 6, 2019, the Court ruled in the government's favor on the parties' cross-motions for judgment on the administrative record. Op. and Order. ECF No. 44. NetCentrics noted an immediate appeal of the Court's decision, ECF No. 45, and filed a motion for a stay pending appeal, ECF No. 48, which the Court denied October 1, 2019, ECF No. 69.

The relevant facts are set forth in detail in the Court's September 6, 2019 and October 1, 2019 opinions. To briefly summarize: NetCentrics, the incumbent contractor, was the awardee in a competition for a new contract to provide information technology support services to the Department of Defense's Joint Service Provider ("JSP"). After the award was announced, one of NetCentrics's competitors, intervenor NCI Information Services ("NCI"), filed a bid protest with the Government Accountability Office ("GAO"). In its protest, NCI alleged that Mr. A, one of the key personnel identified in NetCentrics's FPR, had left NetCentrics's employ thirty days before submission of the FPR and was not available to perform on the contract at the time of the award.

The agency conducted an inquiry in response to the GAO protest and concluded that NetCentrics's FPR included material misrepresentations. Specifically, the agency found that—as of the time NetCentrics submitted its FPR in December of 2018—it did not have reasonable grounds to represent that Mr. A would be available immediately to serve as Deputy Program Manager if NetCentrics were awarded the contract. In its September 6, 2019 opinion, the Court found that the agency's determination was neither arbitrary, capricious, nor contrary to law. The Court subsequently rejected NetCentrics's motion for a stay pending appeal, finding that it had not shown a likelihood of success on the merits or that the balance of equities tipped in favor of a stay. See ECF No. 69.

NetCentrics now seeks relief from judgment under RCFC 60(b). Its request is based on allegations in an October 27, 2019 declaration executed by Mr. A which NetCentrics has filed with its motion. See Pl.'s Mot. Ex. A (Declaration of Mr. A executed on October 27, 2019) (hereinafter "1st Mr. A Decl."). Mr. A originally provided the declaration to NetCentrics for use in responding to suspension and debarment proceedings initiated by the Air Force on September 16, 2019. See Pl.'s Mot. Ex. B, at ¶ 5 (Declaration of Mr. A executed on November 19, 2019)

(hereinafter "2d Mr. A Decl."); Pl.'s Mot. Ex. C (September 16, 2019 letter to NetCentrics from Derek B. Santos, Suspension and Debarment Official).

Mr. A states that he had been reluctant to provide the October 27, 2019 declaration to NetCentrics "out of concern that [his] name would become public, that [his] other employment relations would be damaged, and that [he] would be drawn into a court case." 2d Mr. A Decl. at ¶ 4. He nonetheless agreed to do so with the understanding that it would only be used in connection with the debarment proceedings. Id. at ¶ 5. Mr. A subsequently agreed to allow NetCentrics to supply the declaration to the Court in connection with these proceedings. Id. at ¶ 6.

Among other things, Mr. A's October 27 declaration addresses statements contained in a July 19, 2019 declaration executed by Mr. B, another [* * *]. See Pl.'s Mot. Ex. C (Declaration of Mr. B) (hereinafter "Mr. B Decl."). The government had originally filed Mr. B's declaration in support of its opposition to NetCentrics's motion for a stay pending appeal. See ECF No. 60-1 at A40.

In his declaration, Mr. B took issue with the accuracy of assertions in GAO's June 5, 2019 decision that Mr. A had told NetCentrics that he was available and willing to return as a full-time employee. Mr. B asserted that: 1) prior to Mr. A's departure from NetCentrics, Mr. A had "made it clear to [him] that he had no interest in returning to NetCentrics as a full-time employee," Mr. B Decl. at ¶ 10; 2) the letter of commitment that Mr. A signed on March 1, 2019 while this matter was before GAO was executed with the understanding that Mr. A would remain with his new employer on a full-time basis while serving as only a part-time consultant to NetCentrics, id. at ¶ 12; and 3) before the letter was signed, no agreement had been reached between NetCentrics and Mr. A regarding the terms of any consulting arrangement, including hours, compensation, or place of performance, id. at ¶ 9–12.

In his October 27 declaration, Mr. A provides a fuller explanation of the circumstances surrounding his departure from NetCentrics in October 2018. See 1st Mr. A Decl. He also states that he does not recall making some of the statements attributed to him by Mr. B. Id. at ¶ 15.

## DISCUSSION

RCFC 60(b)(2) provides that the Court may relieve a party from a judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b)." NetCentrics contends that Mr. A's October 27, 2019 declaration is "newly discovered evidence," whose contents are "material to the central issue in th[is] case." See Pl.'s Mot at 10. Alternatively, NetCentrics relies upon RCFC 60(b)(3), which makes relief from judgment available based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." See id. at 7. According to NetCentrics, Mr. A's declaration demonstrates that intervenor NCI "pushed" what NetCentrics calls a "false narrative" that misled the contracting officer and this Court, thereby justifying relief under RCFC 60(b)(3). Id.

It is well settled that Rule 60(b) should be "liberally construed for the purpose of doing substantial justice." Patton v. Sec'y of Health & Human Servs., 25 F.3d 1021, 1030 (Fed. Cir.

1994) (citing 7 James W. Moore & Jo Desha Lucas, Moore's Federal Practice ¶¶ 60.18[8], 60.19 (2d ed. 1993)). Nonetheless, the Supreme Court has cautioned that the Rule "should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988) (quoting Ackermann v. United States, 340 U.S. 193 (1950)).

For the reasons set forth below, NetCentrics has failed to establish its entitlement to relief under either RCFC 60(b)(2) or 60(b)(3). Its motion for relief from judgment on the administrative record is therefore **DENIED**.

I.  **RCFC 60(b)(2)**

As noted above, the Court may grant a party relief from judgment under RCFC 60(b)(2) on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b)." For purposes of RCFC 60(b)(2), "newly discovered evidence" is limited to "evidence of facts which existed at the time of decision and of which the aggrieved party was excusably ignorant." TDM Am., LLC v. United States, 100 Fed. Cl. 485, 490 (2011) (citing Yachts Am., Inc. v. United States, 8 Cl. Ct. 278, 281 (1985), aff'd, 779 F.2d 656 (Fed. Cir. 1985)). Therefore, when seeking relief under RCFC 60(b)(2), a party must demonstrate "(1) that the evidence was actually newly discovered, that is, it must have been discovered subsequent to trial; (2) that the movant exercised due diligence; and (3) that the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result." Sigmatech, Inc. v. United States, 144 Fed. Cl. 159, 175 (2019) (quoting TDM Am., 100 Fed. Cl. at 490).

NetCentrics contends that Mr. A's declaration is "newly discovered evidence" because Mr. A only recently agreed to provide his own account of the circumstances of his departure from NetCentrics and any commitments he made to return to its employ. Pl.'s Mot. at 10–11. It further contends that the information in the declaration would have been material to this Court's decision on the parties' cross-motions for judgment on the administrative record because it allegedly "confirms what NetCentrics has said all along" regarding those matters. Id. at 12.

NetCentrics's arguments lack merit. First, the declaration is not "newly discovered evidence" because NetCentrics has always been aware of Mr. A's location and presumably the content of any testimony he might provide. The Court understands Mr. A was unwilling to voluntarily participate in this litigation until very recently but also notes that NetCentrics made no effort to compel his testimony earlier by issuing a subpoena under RCFC 45. Relief from judgment based on RCFC 60(b)(2) is not justified under these circumstances. See Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC, 597 F.3d 1374, 1384 (Fed. Cir. 2010) (upholding denial of motion for reconsideration based on new witness affidavits where movant failed to show that the testimony of the witnesses was unavailable during the pendency of summary judgment proceedings); Washington v. Patlis, 916 F.2d 1036, 1038 (5th Cir. 1990) (affirming denial of reconsideration where plaintiff knew witness's identity and what her testimony would be before trial but failed to move for a continuance to locate her, observing that the circumstances suggested that plaintiff "believed that she could adequately present her case without [the witness's] testimony").

In any event, the information supplied in Mr. A's October 27, 2019 declaration is not "material" because—for a number of reasons—it would not have "clearly . . . produced a different result if presented before the original judgment." Venture Indus. Corp. v. Autoliv ASP, Inc., 457 F.3d 1322, 1328 (Fed. Cir. 2006) (quoting Good v. Ohio Edison Co., 149 F.3d 413, 423 (6th Cir. 1998)). For one thing, even if NetCentrics had supplied an identical declaration to the Court while the matter was before it, it is unlikely the Court would have admitted it into evidence, because "the focal point for judicial review [in a bid protest] should be the administrative record already in existence, not some new record made initially in the reviewing court." Axiom Res. Mgmt. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). The Court's decision on the cross-motions for judgment on the administrative record was not based on a de novo determination that NetCentrics lacked reasonable grounds to believe that it could make Mr. A immediately available to serve as Deputy Program Manager in the event of a contract award. Instead, the Court was reviewing whether—in light of the record NetCentrics produced before the agency— the agency's determination to that effect was arbitrary, capricious, or contrary to law.

Further, even if the Court agreed to admit such extra-record evidence and to remand the case back to the agency for consideration of Mr. A's declaration, the declaration would not have "clearly" changed the outcome of the case. As recounted in this Court's earlier opinions, the agency's conclusion that NetCentrics lacked reasonable grounds to vouch for Mr. A's immediate availability was based on the opaque and unspecific nature of the communications between Mr. A and NetCentrics regarding his intent to return to NetCentrics. Mr. A's October 27 declaration does not do much to remedy that perceived shortcoming. In fact, in some ways, it is similarly ambiguous and inconclusive regarding Mr. A's intent at the time NetCentrics submitted its FPR, and regarding what he had communicated to his former employer regarding that intent.

In his declaration, Mr. A explains that two years before he left NetCentrics, and unbeknownst to it, he had signed a letter of commitment to be used by another government contractor in its proposal seeking a different contract award. 1st Mr. A Decl. at ¶ 6. That contractor received the award it sought in August 2018 and Mr. A left his position with NetCentrics to work for the contractor in October 2018. Id. Mr. A states, among other things, that despite his departure, he did not ask NetCentrics to remove his name from its initial proposal. Id. at ¶ 7. He also confirms that he told "various NetCentrics personnel" before he left that he "would remain open to returning to NetCentrics if it received the JSP award." Id.

His statement that he "would remain open" to return to NetCentrics does not evince a commitment to do so, nor would it have been reasonable for NetCentrics personnel to so interpret it. In fact, Mr. A acknowledges that "[i]n all candor," he "cannot say for certain how [he] would have answered if NetCentrics had asked [him] for a [letter of commitment] in early December 2018." Id. at ¶ 14. He explains that he had just started his new job, and the program for which he had responsibility was under a protest that his new employer ultimately lost. Id. He states that he "believe[s]" that his new employer "would have let [him] serve as the Deputy Program Manager for JSP from its platform" and that he "may have returned to NetCentrics to do so under the right conditions." Id.

None of these assertions are game-changers. Indeed, they actually seem to confirm what the contracting officer found—that Mr. A was not committed to returning to NetCentrics as of

5

the time it submitted its FPR in December 2018, and that NetCentrics lacked a reasonable basis at the time for believing he would do so.

Mr. A further states in his declaration that although he spoke to Mr. B after he left NetCentrics, "[he did not] recall ever" making some of the statements Mr. B attributed to him, specifically: 1) regarding his lack of willingness to return to NetCentrics except on a part-time basis; and 2) that he had signed a letter of commitment to NetCentrics while the present protest was before GAO only on the condition that he could remain with his new employer. Id. at ¶ 15. A lack of recall, of course, is not a categorical denial. And in any event, the statements attributed to Mr. A in the Mr. B declaration were never put before the contracting officer or before this Court prior to its disposition of the parties' cross-motions for judgment on the administrative record. The assertions in Mr. A's declaration that are presumably intended to cast doubt upon their accuracy are therefore immaterial. For that reason and the others set forth above, NetCentrics has failed to meet its heavy burden of showing that reconsideration is warranted on the basis of newly discovered evidence under RCFC 60(b)(2).

## II.    RCFC 60(b)(3)

NetCentrics argues in the alternative that relief from judgment is appropriate under RCFC 60(b)(3) based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Specifically, it contends that—beginning with its initial protest before GAO—intervenor NCI has "proffered a false narrative in an effort to paint NetCentrics as dishonest to take away the contract award." Pl.'s Mot. at 7. Further, according to NetCentrics, NCI has "continued to infuse its false narrative into this Court's proceeding by feeding misleading statements to the Agency," namely, the declaration of Mr. B, which the Agency has since forwarded to the Air Force Suspension and Debarment Official. Id. at 7–8.

"To succeed on a motion under RCFC 60(b)(3), the 'movant must demonstrate fraud, misrepresentation, or misconduct by clear and convincing evidence.'" Wagstaff v. United States, 118 Fed. Cl. 172, 176 (2014), aff'd, 595 F. App'x 975 (Fed. Cir. 2014) (quoting Madison Servs., Inc. v. United States, 94 Fed. Cl. 501, 507 (2010)). "In addition, the fraud or misconduct must have 'prevented the movant from receiving a fair hearing or trial.'" Id. (quoting Griffin v. United States, 96 Fed. Cl. 1, 9 (2010)).

NetCentrics has fallen far short of its burden under RCFC 60(b)(3). For one thing, NCI, the alleged source of the "false narratives" about which NetCentrics complains, did not become a party to this case until several weeks after NetCentrics filed its appeal of the Court's September 6, 2019 judgment. The allegedly false narratives for which NetCentrics holds NCI responsible were proffered before NCI intervened and hence could not fall into the category of "fraud . . . , misrepresentation, or misconduct by an opposing party." See RCFC 60(b)(3) (emphasis supplied).

Second, NetCentrics does not actually identify any statements by NCI that were "false." For example, NetCentrics contends that NCI "promoted" the "negative inference" that Mr. A's "job change necessarily meant that NetCentrics had lied about his availability and commitment for the JSP contract." Pl.'s Mot. at 4. But the record shows that NCI filed a GAO protest after it

noted that Mr. A's public LinkedIn page reflected that he had left NetCentrics for a new job. It was not improper, much less an act of fraud, for NCI to question whether—in light of Mr. A's departure—NetCentrics had engaged in a "bait and switch" or that it had at least submitted a proposal that contained a material misrepresentation. And neither the agency nor the Court was led to believe by anything NCI asserted that NetCentrics had "lied" in its proposal; to the contrary, both the agency and the Court have assumed that the misrepresentation about Mr. A's availability in the FPR was a negligent, not intentional one.

Finally, and in any event, the contracting officer's finding of material misrepresentation was not based on information provided by NCI but on her own investigation of the facts. During her inquiry, she gave NetCentrics a fair opportunity to make its case that it had reasonable grounds to believe that Mr. A would leave his new employer and return to NetCentrics if it received the contract award. Further, as described above, the contracting officer did not consider any of the allegedly inaccurate statements in the Mr. B declaration when she decided to rescind the award to NetCentrics; nor did the Court consider the declaration when ruling on the parties' cross-motions for judgment on the administrative record. In fact, the declaration was drafted in July of 2019, well after the agency rescinded the award. It was not filed with the Court until after it issued its ruling and only in connection with NetCentrics's motion for a stay pending appeal. Even then, the Court did not rely on the Mr. B declaration in any respect when it denied the stay request, viewing it as irrelevant to the merits because it was never part of the administrative record.

NetCentrics, in short, was not prevented from receiving a fair hearing as a result of any fraud, misrepresentation, or other misconduct by an opposing party. To the contrary, NetCentrics was given ample opportunity both before the agency and this Court to rebut any alleged "false narratives" and to make its case. Unfortunately for NetCentrics, the documents and other information it provided the contracting officer simply failed to persuade. NetCentrics is therefore not entitled to relief from judgment under RCFC 60(b)(3).

## CONCLUSION

For the reasons set forth above, NetCentrics's motion for relief from judgment on the administrative record is **DENIED**.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge